IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KATHERINE A. SWANSON,

    Plaintiff,　　　　　　　　　　No. CIV S-10-1010 DAD

    vs.

MICHAEL J. ASTRUE,　　　　　　　　ORDER
Commissioner of Social Security,

    Defendant.
_____/

    This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted, defendant's cross-motion is denied, the decision of the Commissioner of Social Security (Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

    On April 18, 2006, plaintiff filed an application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), alleging disability beginning on December 1, 2004, due to fibromyalgia and high blood pressure. (Transcript (Tr.) at 95-101, 108.) Plaintiff's application was denied initially on October 6, 2006, and upon reconsideration on February 6, 2007. (Tr. at 67-69, 73-78.) A hearing was held before an Administrative Law

1

Judge (ALJ) on February 6, 2008.  (Tr. at 33-66, 80.)  Plaintiff was represented at the hearing by a non-attorney representative.  (Tr. at 33, 70-71.)  Plaintiff testified at the administrative hearing, as did a vocational expert.  (Tr. at 38-58, 58-65.)  In a partially favorable decision issued on April 18, 2008, the ALJ found plaintiff disabled beginning July 22, 2007, but not prior to that date.  (Tr. at 7-9, 21-22.)  The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since December 1, 2004, the alleged onset date (416.920(b) and 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: fibromyalgia; obesity; osteoarthritis; sclerosis involving the right SI joint, possibly indicating a sacroilitis [sic]; a pain disorder with physical and psychological features (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work on a sustained basis as defined in 20 CFR 416.967(a).  Nonexertionally, the claimant is limited to the performance of simple, repetitive tasks.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was 48 years old on the date the application was filed.  This is defined in the regulations as a younger individual age 45-49.  On July 22, 2007, the claimant attained 50 years of age and her age category changed to an individual closely approaching advanced age (20 CFR 416.963).
>
> 7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Prior to July 22, 2007, transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills.  Beginning on July 22, 2007, the claimant does not have transferable skills to perform other work within her physical and mental residual functional capacity.  (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

/////

>9. Prior to July 22, 2007, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed (20 CFR 416.960(c) and 416.966).
>
>10. Beginning on July 22, 2007, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform (20 CFR 416.960(c) and 416.966).
>
>11. The claimant was not disabled prior to July 22, 2007, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 416.920(g)).

(Tr. at 15-22.)

On February 26, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. at 1-3, 4-5.) Plaintiff then sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on April 26, 2010.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of

3

supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

/////

**APPLICATION**

Plaintiff argues that the ALJ committed two principal errors in finding her not to be disabled prior to July 22, 2007: (1) the ALJ failed to credit plaintiff's testimony regarding the nature and extent of her functional limitations without articulating clear and convincing reasons for so doing; and (2) the ALJ failed to pose a legally adequate hypothetical question to the vocational expert and erred in utilizing the grids to find plaintiff not disabled prior to July 22, 2007. These arguments are addressed below.

**I.    Plaintiff's Testimony Regarding Her Functional Limitations**

Once a claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged, the ALJ may not discredit the claimant's own testimony as to the severity of her symptoms merely because the degree of severity is unsupported by objective medical evidence. Lingenfelter v. Astrue, 504 F.3d 1023, 1035-36 (9th Cir. 2007); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). "'[T]he ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Light, 119 F.3d at 792 (quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). See also Morgan, 169 F.3d at 599; Reddick, 157 F.3d at 722; Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993) (citing Miller, 770 F.2d at 848).

In evaluating a claimant's subjective testimony regarding pain and the severity of symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence along with many other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); Smolen, 80 F.3d at 1285. The ALJ may also rely in part on his own observations of the claimant. Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989). However, the ALJ cannot substitute such observations for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

1    Questions of credibility and the resolution of conflicts in the testimony are usually
2 deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599. Thus, the
3 determination of credibility is a function of the ALJ acting on behalf of the Commissioner.
4 Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). As a general rule, then, an ALJ's assessment
5 of credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.
6 1985). Ordinary techniques of credibility evaluation may be employed, and the adjudicator may
7 take into account prior inconsistent statements or a lack of candor by the witness. Fair v. Bowen,
8 885 F.2d 597, 604 n.5 (9th Cir. 1989).

9    Absent affirmative evidence of malingering, the ALJ's reasons for rejecting a
10 claimant's testimony must be clear and convincing. Morgan, 169 F.3d at 599. See also Benton
11 v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (holding that the ALJ can reject a claimant's
12 allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and
13 convincing reasons for doing so"). The factors to be considered in weighing a claimant's
14 credibility include (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the
15 claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's
16 daily activities; (4) the claimant's work record; and (5) testimony from physicians and third
17 parties concerning the nature, severity, and effect of the symptoms of which the claimant
18 complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). "It is not sufficient for
19 the ALJ to make only general findings." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).
20 Where there is no evidence of malingering, the ALJ may properly discredit the claimant's alleged
21 functional limitations only by identifying evidence in the record that undermines the plaintiff's
22 testimony. Id. The ALJ must identify what testimony is not credible and specify what evidence
23 undermines the credibility of that testimony. Reddick, 157 F.3d at 722; Lester, 81 F.3d at 834.

24    Here, the ALJ found that plaintiff has the following severe impairments:
25 fibromyalgia; obesity; osteoarthritis; sclerosis involving the right SI joint, possibly indicating a
26 sacroiliitis; and a pain disorder with physical and psychological features. (Tr. at 15.) The ALJ

found further that plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms." (Tr. at 17.) Despite the latter finding, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to July 22, 2007, to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Id.)

The ALJ made no finding that plaintiff was malingering, and the record does not appear to contain any evidence of malingering on plaintiff's part. Thus, plaintiff's testimony regarding her symptoms may be discredited by the ALJ only by citation to evidence in the record that undermines specific testimony by plaintiff regarding those symptoms. Instead, the ALJ in this case found plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms not credible before July 21, 2007, but credible as of July 22, 2007, when plaintiff attained the age of 50. To the extent that the ALJ found plaintiff's age relevant to a determination of her credibility, the court rejects the finding as unsupported by law, regulation, or court decision. The court can only assume that the sentence, quoted above, containing this finding does not express the ALJ's intended meaning and, on that ground, the court disregards that statement by the ALJ.

The court next turns to the reasons advanced by the ALJ in support of a sweeping conclusion that plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms is not credible. The first reason offered by the ALJ in this regard is that plaintiff's claims regarding the severity of her symptoms are not supported by objective medical evidence with respect to her fibromyalgia. (Tr. at 17-18.) Despite having already determined that fibromyalgia is one of plaintiff's severe impairments, the ALJ asserts a "lack of ongoing and significant objective clinical findings which could warrant a finding of disability." (Id. at 18.) The ALJ found "no indication of muscle wasting, gross muscle atrophy, or loss of sensation due to nerve damage," "no specific treatment for the claimant's allegations other than the prescription of pain medication," and "no indication that she has received injections or physical therapy

treatment, or that she has been referred to a specialist or a pain clinic for her pain symptoms." (Id.)  The ALJ noted that in February of 2006 plaintiff "reported that her pain had improved slightly with the addition of Neurontin" and treatment notes in May 2006 indicated that plaintiff's "fibromyalgia was controlled with increased Neurontin," although "[e]xamination revealed multiple tender points" and she was seen for medication refills thereafter.  (Id.)

The ALJ cites 48 pages of medical records to support the finding of a "lack of ongoing and significant objective clinical findings" regarding plaintiff's diagnosis of fibromyalgia.  (Id. )(citing Exs. 8F [tr. at 221-61] & 12F [tr. at 303-09]).  However, neither the treatment records cited by the ALJ nor the various medical opinions in the record reflect any doctor's opinion that muscle wasting, gross muscle atrophy, and loss of sensation due to nerve damage were required to substantiate a diagnosis of fibromyalgia.  Nor do those records reflect any doctor's opinion that treatments in addition to prescription of pain medication, such as injections, physical therapy, referrals to specialists, and referral to a pain clinic, were required in order to substantiate the severity of the symptoms reported by the plaintiff in this case.

As the Ninth Circuit Court of Appeals has noted, "[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004).  Although there is a set of diagnostic criteria for fibromyalgia, there are no laboratory tests that can confirm the diagnosis.[1] Id. at 589-90; Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004); Rollins v. Massanari, 261 F.3d 853, 855 (9th Cir. 2001).  "Common symptoms . . . include

---

[1] According to the Mayo Clinic, the guidelines established by the American College of Rheumatology in 1990 may still be used by researchers studying fibromyalgia, but fibromyalgia symptoms can come and go.  Less stringent guidelines have been developed for doctors to use in general practice.  The newer diagnostic criteria include widespread pain lasting at least three months and no other underlying condition that might be causing the pain. Mayo Found. for Med. Educ. & Research, Fibromyalgia, "Tests and diagnosis" http://www.mayoclinic.com/health (last visited Sept. 29, 2011).

chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." Benecke, 379 F.3d at 589-90.

The medical evidence of record in the present case documents that plaintiff has been diagnosed by doctors as having fibromyalgia for many years, along with osteoarthritis, right hip sacroiliitis, a pain disorder, and obesity.  Plaintiff's symptoms include pain, fatigue, headaches, a need for naps, manipulative limitations, limitations on her ability to sit, stand, and walk, and impaired concentration.  The ALJ did not identify any specific testimony which the ALJ found not to be credible but instead merely discounted plaintiff's "subjective complaints" in general and found her "not limited by incapacitating pain, fatigue or limitation from performing sedentary [work]."  (Tr. at 18.)  By discrediting plaintiff's own testimony as to the severity of her symptoms on the ground that the alleged degree of severity was unsupported by objective medical evidence, the ALJ failed to apply the proper legal standard and did not support the finding by citing to substantial evidence in the record as a whole.  See Lingenfelter, 504 F.3d at 1035-36; Reddick, 157 F.3d at 722; Light, 119 F.3d at 792.

Next, the ALJ cited plaintiff's daily activities as a basis for discrediting her subjective testimony.  In this regard, the ALJ found that plaintiff's

> abilities . . . include a range of activities that are incompatible with the presence of a disabling level of pain or limitation.  The record shows that the claimant cooks.  She vacuums, does laundry and ironing at her own pace.  She drives or uses public transportation independently.  She pays her own bills and shops for groceries (Exhibits 4E, 10E, 2F, 3F).  These activities do not support the degree of limitation, fatigue, pain or mental limitation alleged by the claimant.

(Tr. at 18.)  Plaintiff disputes the ALJ's characterization of her daily activities and argues that her limited level of activity and functional limitations are incompatible with full time work on a sustained basis.  The court finds plaintiff's arguments persuasive.

/////

With respect to daily activities, it is well established that claimants need not be "utterly incapacitated to be eligible for benefits." Fair, 885 F.2d at 603. The Ninth Circuit Court of Appeals "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001). See also Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) As a general rule, the Commissioner does not consider "activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e).

Daily activities may be grounds for an adverse credibility finding only if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). In order to conclude that the claimant's activities warrant an adverse credibility determination, however, the ALJ must make specific findings relating to the claimant's daily activities and the transferability of those activities to the work setting. Id.

The ALJ in this case made no such specific findings about the transferability of plaintiff's daily activities to the work setting, and the court finds that the record does not support a conclusion that plaintiff's daily activities are transferable to a work setting. Jenna Brimmer, M.D., performed a comprehensive internal medicine evaluation of plaintiff on July 7, 2006, and noted that plaintiff's chief complaint was fatigue that had been present for several years but had gotten worse over the preceding one or two years. (Tr. at 187.) Dr. Brimmer recorded that plaintiff

> is limited in her activities. She can only walk one block, go up 4-5 stairs at a time, lift a gallon of milk and stand for five minutes. . . . She last worked in August 2004 doing restoration work. She said she was fired because she would miss work and drop expensive things related to her fatigue. At home, she can perform her own hygiene and dress herself independently. She can do cooking and dishes while seated. No vacuuming or mopping because of her

> fatigue. She says she does light loads of laundry about once per month. This is limited by her fatigue.

(Id.) Timothy Canty, M.D. performed a psychiatric evaluation of plaintiff on July 21, 2006, and recorded that plaintiff "does light chores as tolerated and manages her own money." (Tr. at 192.)

In an Adult Function Report, plaintiff wrote that she can manage one small chore a day and it "feels like a full 8 hour day." (Tr. at 157.) She prepares a frozen meal about once a month but must use a stool to sit on and cannot have any distractions while doing it. (Tr. at 160.) In an Exertional Daily Activities Questionnaire, plaintiff wrote "I'll cook dinner but get to[o] worn out to eat it when it's done. I dust the living room, it takes hours." (Tr. at 120.)

At the administrative hearing held on February 6, 2008, plaintiff testified as follows: she does a small load of wash once a week but has difficulty pulling her clothes out of the dryer because it requires bending over; she no longer goes shopping and her daughter does all the grocery shopping and even buys plaintiff's clothes; her daughter does the main cooking, and when plaintiff does any cooking, she sits on a stool at the stove because if she walks away she will forget she was cooking. (Tr. at 54.) In response to the ALJ's inquiry about what she does when she gets up in the morning, plaintiff testified that if she gets up in the morning,

> it's usually just to go to the bathroom, then I go back to bed because I'm too tired to sit up and do anything. And then I've noticed that I've been like getting up around 2:00 in the afternoon and I'll try and watch TV for about an hour or so and I never really pay much attention to what's on TV because I find myself just staring at it most of the time and then I'll let my daughter's dogs out in the backyard and probably within a couple of hours I'm ready for a nap because I'm tired again and I try to walk around the house or I'll even try to do a couple of dishes or put them in the dishwasher and then I have to go sit again because my lower back is [in] excruciating pain and so I really don't do a whole lot of anything.

Tr. at 44. Plaintiff described her pain symptoms as follows:

> I have all around pain. I have chronic tendonitis. I have chronic fatigue, especially in my lower legs and I have memory loss, short-term memory and headaches. . . . And I drop things. I have shock-

11

|   |   |
|---|---|
| 1 | like pain from my nerves and my, I have a lot of problems with my sacroiliac . . . . |
| 2 | |

(Tr. at 46.) Plaintiff testified that she takes Ibuprofen, uses cool compresses, and gets in bed with the lights out when she experiences longer headaches, which her doctor attributes to fibromyalgia. (Tr. at 48.) She also testified that her weight was 297 pounds, she uses a cane to help her stand up from a seated position and for balance because she has fallen, she gets stiff after sitting for an hour and has to stand up and stretch, but she can only walk for a few minutes before needing to take a break. (Tr. at 52-53.)

The court finds that the evidence of record with respect to plaintiff's daily activities do not detract from her credibility as to her overall disability. Plaintiff's daily activities prior to, as well as after, July 22, 2007 consisted solely of taking care of herself to a limited degree and performing small household tasks infrequently. The record does not support a conclusion that plaintiff spent a substantial part of her day engaged in pursuits involving the performance of physical functions that would be transferable to any work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ"s adverse credibility determination with regard to plaintiff is not supported by the requisite findings relating to the transferability of plaintiff's daily activities to the work setting. Accordingly, the court finds that plaintiff's daily activities do not provide a clear and convincing reason for discrediting her subjective testimony.

The ALJ's third reason for discrediting plaintiff's subjective testimony is that, contrary to the "alleged worsening of her symptoms," "the record does not provide evidence of any ongoing or worsening condition that would significantly reduce the claimant's functioning at this time." (Id.) The ALJ stated that "[t]here is no indication that changes were made in the claimant's treatment regimen or that diagnostic testing was ordered," that [s]he has not sought intense, ongoing treatment to help reduce her symptoms," and that "her allegations are contrary to the recommendations of her treating physician that she exercise." (Id.) (citing Ex. 12F [tr. at 303-09]).

Plaintiff argues that the record contains ample evidence that her symptoms were worsening, citing in particular evidence of significant worsening of her obesity, which the ALJ failed to discuss despite the fact that Social Security Ruling 02-01p notes that morbid obesity may increase the severity of related impairments to the extent that the combined impairments may meet the requirements of a listed impairment. (See Pl.'s Mot. & Mem. of P. & A. (Doc. No. 18) at 20-22.) In addition, the record reflects that plaintiff had suffered from fibromyalgia for several years prior to July of 2006 when she reported to Dr. Brimmer that the fatigue caused by her fibromyalgia had worsened in the past year or two. (Tr. at 187.) Thus, the record regarding plaintiff's fibromyalgia and her obesity contradicts the ALJ's conclusion that the record provides no evidence of any ongoing or worsening condition that would significantly reduce plaintiff's functioning. Nor does the record support the ALJ's conclusion that plaintiff "has not sought intense, ongoing treatment to help reduce her symptoms." Plaintiff complained to Dr. Canty in 2006 that she was "frustrated by the lack of effective treatment" and had "tried to sign up for a fibromyalgia study but was declined." (Tr. at 192.) The record also documents changes in plaintiff's pain medication, both as to type and dosage. (See tr. at 183, 226-29, 250.) In light of the fact that there are no laboratory tests that can confirm a diagnosis of fibromyalgia, Benecke, 379 F.3d at 589-90, the ALJ's assertion that no diagnostic testing was ordered carries no weight. Accordingly, the court finds that the ALJ's third reason for discrediting plaintiff's subjective testimony is also unsupported by substantial evidence in the record.

In sum, the court concludes that the ALJ's reasons for not crediting plaintiff's subjective testimony for the time prior to July 22, 2007 are not clear and convincing. Plaintiff is therefore entitled to summary judgment on her argument that the ALJ erred in failing to credit plaintiff's testimony regarding her pain and functional limitations.

**II. The ALJ's Hypothetical Questions and Use of the Grids**

Plaintiff's second argument is that, as a result of discrediting her testimony regarding her pain and functional limitations, the ALJ failed to base plaintiff's residual functional

capacity (RFC) on the whole record, failed to include all of plaintiff's limitations and restrictions in the hypothetical questions posed to the vocational expert (VE), and improperly used the grids in finding plaintiff not disabled prior to July 22, 2007. The court agrees.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). The assessment of RFC must be "based on all the relevant evidence in [the claimant's] case record." Id. See also Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001).

"The grids are an administrative tool the Secretary may rely on when considering claimants with substantially uniform levels of impairment." Burkhart, 856 F.2d at 1340. The grids reflect "major functional and vocational patterns" and incorporate the analysis of critical vocational factors, i.e., age, education, and work experience, in combination with the individual's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). The grids may be utilized when they "'accurately and completely describe the claimant's abilities and limitations.'" Burkhart, 856 F.2d at 1340 (quoting Jones, 760 F.2d at 998). "When a claimant's nonexertional limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations, the grids are inapplicable. . . . In such instances, the Secretary must take the testimony of a vocational expert and identify specific jobs within the claimant's capabilities." Burkhart, 856 F.2d at 1340 (quoting Desrosiers v. Sec'y of Health & Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988)). See also Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (holding that "an ALJ may rely solely on the Medical-Vocational Guidelines (the 'grids') only when a claimant can perform the full range of applicable work" and the ALJ erred in failing to obtain the testimony of a vocational expert).

Here, in the absence of any evidence of malingering, the ALJ should have considered plaintiff's testimony regarding pain, fatigue, and functional limitations in determining her RFC and should have included additional limitations in the hypothetical questions that were posed to the VE. Specifically, the RFC should have incorporated plaintiff's need for naps due to

fatigue and pain, plaintiff's need to stand up and stretch after sitting for an hour, plaintiff's ability to lift only a few pounds, and plaintiff's need to rest after standing for only a few minutes.

As a result of the ALJ's failure to credit plaintiff's testimony and to include in the hypothetical questions all limitations supported by the record, plaintiff is entitled to summary judgment in her favor on her claim that the hypothetical questions posed to the vocational expert were deficient. See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (ALJ is required to question a vocational expert in a manner that properly takes into account the limitations on the plaintiff's abilities to engage in various work-related functions). Moreover, the ALJ's use of the grids was improper due to the severity of plaintiff's nonexertional limitations. Id.

For the reasons set forth above, the decision of the Commissioner will be reversed, and the case will be remanded for a re-determination of plaintiff's RFC in accordance with this order. If the ALJ again finds that plaintiff had the RFC to work prior to July 22, 2007, the ALJ must conduct a further administrative hearing and take the testimony of a vocational expert to determine whether plaintiff could have performed jobs that existed in substantial numbers in the national economy at the relevant time. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). At any further administrative hearing, the ALJ must pose proper hypothetical questions that take into account all of plaintiff's limitations, including the nonexertional limitations described above. See Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004); Tackett, 180 F.3d at 1103-04.

**CONCLUSION**

The decision whether to remand a case for further proceedings or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed."

Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting disability claims. Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, the court finds it necessary to remand the case for re-assessment of plaintiff's RFC and, if necessary, a hearing at which the ALJ poses hypothetical questions that include additional limitations and a VE testifies regarding what work, if any, plaintiff could have performed that would have accommodated her nonexertional symptoms.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 18) is granted;

2. Defendant's cross-motion for summary judgment (Doc. No. 19) is denied;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

DATED: September 29, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/swanson1010.order